UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Alexandra J. C., | Case No. 18-cv-2900 (TNL) |
| Plaintiff, | |
| v. | **ORDER** |
| Andrew Saul, Commissioner of Social Security, | |
| Defendant. | |

Gerald S. Weinrich, Weinrich Law Office, Northgate Center, 1201 ½ 7th Street NW, Suite 214, Rochester, MN 55901 (for Plaintiff); and

Michael Moss, Social Security Administration, Office of the General Counsel, 1301 Young Street, Suite 340, Dallas, TX 75202 (for Defendant).

## I. INTRODUCTION

Plaintiff Alexandra J. C. challenges Defendant Commissioner of Social Security's denial of her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The parties have consented to a final judgment from the undersigned United States Magistrate Judge in accordance with 28 U.S.C. § 636(c) and D. Minn. LR 7.2. This matter is before the Court on the parties' cross motions for summary judgment. For the reasons set forth below, the Court denies Plaintiff's motion and grants Defendant's motion.

## II. BACKGROUND

### A. Procedural History

Plaintiff filed an action for DIB on April 15, 2014, alleging a disability onset date of April 8, 2013. Plaintiff was found not disabled on July 22, 2014. That finding was affirmed upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on June 21, 2016 and, on July 28, 2016, the ALJ issued a decision denying Plaintiff's claim for benefits. Plaintiff sought review of the ALJ's decision through the Appeals Council, which denied her request for review. Plaintiff now seeks review by this Court.

### B. Administrative Hearing and ALJ Decision

The ALJ found that Plaintiff had the severe impairments of a stroke, type 2 diabetes, obesity, hypertension, hyperlipidemia, a frozen right shoulder, carpal tunnel syndrome, and an organic brain disorder secondary to the stroke. (Tr. 185). The ALJ further found and concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404.15, Subpt. P, App. 1. (Tr. 185-86). The ALJ considered Listings 1.02 (major dysfunction of a joint due to any cause), 11.04 (central nervous system vascular accident), 11.14 (peripheral neuropathy), and 12.02 (neurocognitive disorders). (Tr. 186). The ALJ also considered Plaintiff's hypertension, hyperlipidemia, obesity, and diabetes mellitus under their relevant listings. (Tr. 186-87). Following this, the ALJ found Plaintiff to have the residual functioning capacity ("RFC") to

> perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 404.1657(b) except: lift and carry, push and pull 20 pounds occasionally and 10 pounds frequently; sitting limited to 6 hours in an 8 hour day; standing and walking limited to 4 hours in an 8 hour day; occasional right overhead reach; frequent right sided handling and fingering; occasional climb ramps and stairs; no climbing ladders, ropes, or scaffolds; no exposure to unprotected heights or moving mechanical parts; limited to simple, routine and repetitive tasks; limited to simple work-related decisions with respect to judgment and workplace changes.

(Tr. 188). The ALJ then concluded Plaintiff had no past relevant work experience, but that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 197-98). In particular, the ALJ determined that Plaintiff could work in light exertion inspection; as a sedentary exertion printed circuit assembler; as a benchworker; and as an optical accessory polisher – plastic. (Tr. 198). Accordingly, the ALJ found that Plaintiff was not disabled. (Tr. 199).

## III. ANALYSIS

### A. Legal Standard

Disability benefits are available to individuals who are determined to be under a disability. 42 U.S.C. §§ 423(a)(1)(E), 1381a; *accord* 20 C.F.R. §§ 404.315, 416.901. An individual is considered to be disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less" than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a). This standard is met when a severe physical or mental impairment, or impairments, renders the individual unable to do his or

her previous work or "any other kind of substantial gainful work which exists in the national economy" when taking into account his or her age, education, and work experience. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also* 20 C.F.R. § 404.1505(a). Disability is determined according to a five-step, sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The ALJ must consider whether:

> (1) the claimant was employed; (2) she was severely impaired; (3) her impairment was, or was comparable to, a listed impairment; (4) she could perform past relevant work; and if not, (5) whether she could perform any other kind of work.

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)). In general, the burden of proving the existence of disability lies with the claimant. *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991); 20 C.F.R. § 404.1512(a);

This Court reviews whether the ALJ's decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011) (citing *Harris v. Barnhart*, 356 F.3d 926, 928 (8th Cir. 2004)). "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." *Boettcher*, 652 F.3d at 863 (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)). This standard requires the Court to "consider the evidence that both supports and detracts from the ALJ's decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (citing *Ellis v. Barnhart*, 393 F.3d 988, 993 (8th Cir. 2005)).

The ALJ's decision "will not [be] reverse[d] simply because some evidence supports a conclusion other than that reached by the ALJ." *Perks*, 687 F.3d at 1091 (citing

4

*Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. *Hilkemeyer v. Barnhart*, 380 F.3d 441, 445 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993). Likewise, courts "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Pelkey*, 433 F.3d at 578 (quotation omitted).

### B. The Administrative Record

Plaintiff previously worked at Office Max as a sales associate. (Tr. 766). She left that job in 2009 and began working as a seamstress. (*Id.*). She also took care of her parents. (Tr. 366). After Plaintiff's parents passed away, she began working on probate for their estate. (Tr. 501).

Plaintiff has received care from several health care providers during the time period relevant to her application for benefits. In November 2012, she received care after showing symptoms similar to a Transient Ischemic Attack. (Tr. 566).

Plaintiff suffered two strokes in April 2013 (Tr. 524, 808). She began to see a speech therapist and occupational therapist. (Tr. 460, 465). The speech therapist reported that Plaintiff had difficulty describing details about recent events and tasks and that she required cues to revise sentences. (Tr. 463, 468). Plaintiff reported in May 2013 that occupational therapy had been helpful; she worked on computer skills, sewing projects, and other

activities to improve coordination. (Tr. 465, 476, 480, 483). She also reported improvement in her ability to care for herself and her pets. (Tr. 469). Plaintiff also expressed interest in returning to work as a seamstress. (Tr. 469). She began using her sewing machine again at some point during the course of her treatment. (Tr. 766-67).

Following reports of pain, numbness, and limited mobility in her hands and wrists, Plaintiff underwent a right open carpal tunnel release in November 2013. (Tr. 621). In March 2014, Plaintiff appeared for an initial evaluation with an occupational therapist to address limitations of joint motion of the hand and wrist that she experienced following that procedure. (Tr. 614). Plaintiff indicated she was pursuing employment as a bank teller and that she spent extensive time on a desktop computer, homemaking, and taking care of her cats. (Tr. 614). Plaintiff appeared for several follow-up visits with the occupational therapist. (Tr. 604, 608, 611). She was directed to do several wrist strengthening exercises and shoulder stretches. (Tr. 605, 610, 611). Her occupational and physical therapy providers indicated she showed improvement in her range of motion and that she felt she was not limited in her daily activities. (Tr. 707). Plaintiff also received treatment for right shoulder pain and stiffness in 2014. (Tr. 950).

Throughout her occupational and physical therapy, Plaintiff discussed the possibility of returning to work with a vocational services provider. At a December 2013 appointment, Plaintiff indicated she wanted to obtain employment as a receptionist, administrative assistant, bank teller, or in fast food. (Tr. 732). At a later appointment, Plaintiff reiterated she was interested in obtaining work, and that she preferred jobs that started early and required little work on weekends. (Tr. 715).

Plaintiff reported for a psychological evaluation in July 2014. (Tr. 807). She indicated she performed household chores, prepared meals, and managed her parents estate. (Tr. 809). Her mood appeared euthymic; her eye contact was normal; and her thought process appeared intact. (*Id*.). The treating provider diagnosed Plaintiff with cognitive disorder secondary to TIA. (Tr. 811). The treating provider further determined Plaintiff's ability to understand very simple instructions was adequate; that she interacted with the provider appropriately during the appointment; and that her ability to tolerate workplace stressors might be limited. (Tr. 812).

That same month, Plaintiff also saw Dr. Robert Ivnik for a neuropsychological examination. (Tr. 826). Dr. Ivnik reported Plaintiff appeared fully oriented; that her motor, sensory, speech, and language skills were sufficient for testing needs; and that Plaintiff exhibited "normal naming and semantic fluency." (*Id*.). Dr. Ivnik further indicated that he was "not persuaded that any significant spatial understanding, visual discrimination, or perceptual-motor integration problems [were] indicated." (*Id*.). Dr. Ivnik ultimately stated that he could not characterize Plaintiff's cognitive skills as "necessarily 'abnormal.'" (*Id*.). He also declined to conclude that Plaintiff had any "acquired neurocognitive disorder on the basis of today's test results." (*Id*.). He explained that Plaintiff's verbal and non-verbal reasoning skills were average; that language was "essentially normal;" and that her cognitive skills ranged from "low average to possibly, but not definitely, mildly impaired." (*Id*.).

State consultants Dr. J Sands and Dr. James M. Alsdurf reviewed Plaintiff's claim at the initial level. Dr. Sands determined that Plaintiff had no severe physical impairments.

7

(Tr. 256). Dr. Alsdurf determined that Plaintiff had mild restrictions of daily living; moderate difficulties in maintaining concentration, persistence, and pace; and no difficulties in maintaining social functioning. (Tr. 257). He also determined that Plaintiff had experienced no episodes of decompensation, each of extended duration. (*Id.*). Regarding Plaintiff's RFC, he determined Plaintiff's ability to carry out detailed instructions was "markedly limited." (Tr. 258-59). He also noted that Plaintiff's ability to respond appropriately to changes in the work setting and to set realistic goals or make plans independently of others was moderately limited. (Tr. 259). He concluded, however, that Plaintiff would be able to handle the "routine stresses of a routine, repetitive work setting." (*Id.*). The state consultant findings were largely affirmed on reconsideration.

At the hearing before the ALJ, Plaintiff testified that since her stroke, she was unable to lift her right arm above her head, type, or write. (Tr. 217). She further stated that she could not lift a gallon of milk with her right hand and that her back became sore quickly. (Tr. 218-19). Plaintiff testified that she had difficulty walking, though she did not use an assistive device. (Tr. 220-21). Plaintiff also told the ALJ she had difficulty remembering things. (Tr. 223).

Plaintiff indicated that she had looked for work as a bank teller and at Michael's. (Tr. 226). She stated, however, that she would find it difficult to stand for the amount of time those jobs required. (*Id.*). Her husband testified that since Plaintiff's stroke, she was unable to engage in athletic activity such as hiking or racquetball and that she was not as social as she used to be. (Tr. 244). He also noted that she could not use her right hand as

effectively; that she had difficulty completing household tasks like laundry; and that he was concerned about her memory. (Tr. 245-48).

## C. The ALJ was not Required to Obtain a Consultative Examination

Plaintiff first argues that the ALJ erred by failing to order a consultative examination for the purpose of evaluating her cognitive impairments. Plaintiff contends that the ALJ's determination that Plaintiff could perform a modified level of light work was not based upon "any specific medical evidence[.]" (ECF No. 11, p. 12). Plaintiff claims that because she testified to symptoms resulting from the impairments identified by the ALJ, remand is necessary for the ALJ to develop the record fully.

An ALJ need not obtain a consultative evaluation unless the available evidence does not provide an adequate basis to determine the merits of the claim. 20 C.F.R. § 404.1520b(b). In this case, the ALJ discussed Dr. Ivnik's July 2014 examination, noting that the findings from that examination suggested Plaintiff could perform "simple routine tasks." (Tr. 194). The ALJ also reduced the complexity of work that Plaintiff was able to perform to an unskilled level with limited judgment in order to give "some weight" to the opinion that Plaintiff had only a limited ability to tolerate workplace stress. (*Id.*). The ALJ also placed great weight on the opinion of the state mental health consultants, who found Plaintiff capable of work.[1] Finally, the ALJ found that Plaintiff's therapy records and previous work as a seamstress further established that Plaintiff was capable of the type of work described in the residual functional capacity assessment.

---

[1] Plaintiff did not challenge the ALJ's reliance on the state consultants.

This record provided an adequate basis for the ALJ to decide the merits of Plaintiff's claim. The ALJ's decision further establishes that the ALJ carefully considered all available medical and non-medical evidence and balanced the opinions of the health care medical providers and consultants, as well as Plaintiff's work history and testimony. As a result, the ALJ did not err in failing to order a consultative examination.

### D. The ALJ Properly Considered Plaintiff and her Husband's Testimony

Plaintiff next argues that the ALJ erred by discounting Plaintiff's subjective complaints of pain and related symptoms, as testified to by both herself and her husband. Plaintiff claims the ALJ "cherry picked the medical record to identify instances where [her] treating physicians believed her symptoms had improved or been made manageable." (ECF No. 11, p. 14). Plaintiff argues there "is no part of the medical history that explicitly contradicts [her] description of the nature and severity of her symptoms. (*Id*.).

In considering a person's testimony regarding subjective complaints of pain and severity, the ALJ must consider the

> (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints.

*Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009); *see also* 20 C.F.R. 404.1529(c)(3). Though the ALJ need not explicitly discuss each of these factors, the ALJ may not discount a claimant's allegation of disabling pain unless there are "inconsistencies in the evidence as a whole." *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (citation omitted). This

Court must defer to the ALJ's credibility finding if the ALJ "explicitly discredits a claimant's testimony and gives a good reason for doing so." *Wildman v. Astrue,* 596 F.3d 959, 968 (8th Cir. 2010) (citation omitted).

Here, the ALJ expressly found that "[t]he treatment record and associated clinical findings do not fully support the claimant's subjective allegations[.]" (Tr. 190). The ALJ considered the medical evidence in record, which established that following her April 2013 stroke, Plaintiff regained "significant function" through therapy; that Plaintiff had a frozen right shoulder that was partially relieved by medications and injections; and that Plaintiff's carpal tunnel syndrome improved significantly after surgery. (*Id.*). Rehabilitation records further showed that Plaintiff had demonstrated an increased ability to care for herself. (Tr. 191-92). In addition, the ALJ considered Plaintiff's activities of daily living, which showed that she exercised, cared for and managed her parents' estate, socialized with friends, drove, and completed some household tasks. (Tr. 196). Finally, the ALJ also correctly noted that the record established that Plaintiff left her job for reasons other than disability. Each of these factors was properly considered in assessing the credibility of Plaintiff's subjective complaints. 20 C.F.R. 404.1529(c)(3)(i); *Goff*, 421 F.3d at 793. The ALJ considered Plaintiff's complaints, and, in light of the above evidence, found that though Plaintiff would struggle to complete complex tasks, she would be able to perform simpler work. (Tr. 196). In light of the evidence the ALJ discussed, these findings were supported by substantial evidence.

Plaintiff's complaint that the ALJ "cherry picked" the evidence is without merit. Undoubtedly, there is some evidence in the record to support Plaintiff's subjective

11

complaints. But this Court may not reverse the ALJ's decision simply "because substantial evidence exists in the record that would have supported a contrary outcome . . . or because [the Court] would have decided the case differently." *Roberts v. Apfel*, 222 F.3d 466, 468 (8th Cir. 2000); *see also Woolf*, 3 F.3d at 1213 (stating that the fact that Plaintiff is able to identify some evidence in the record that supports her position does not mean the ALJ's decision must be reversed); *Thiele v. Astrue*, 856 F. Supp. 2d 1034, 1045 (D. Minn. 2012) (concluding the same) (citing *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994)). In an extensive administrative record such as this, it is not surprising that the party challenging the ALJ's decision can identify some evidence that contradicts the ALJ's findings. *See Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017). But as noted above, if "after reviewing the record, the Court finds that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the [C]ommissioner's decision." *Pearsall*, 274 F.3d at 1217. That is the case here. The ALJ carefully evaluated the evidence and identified good reasons to support his decision to place less weight on Plaintiff's testimony regarding her subjective complaints. The Court must therefore defer to the ALJ's credibility finding and conclude it is supported by substantial evidence.

### E. Plaintiff's RFC is Supported by Substantial Evidence

Finally, Plaintiff argues the ALJ's finding that she is able to perform light work on a sustained basis is not supported by substantial evidence. A claimant's RFC is defined as the most a claimant can do despite his limitations, including both physical and mental limitations. 20 C.F.R. § 404.1545. The Commissioner's determination of a claimant's RFC

must be "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). The claimant bears the burden to establish her RFC. *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003).

Here, Plaintiff contends the record establishes that she is capable at most of performing sedentary work, rather than light work. She notes that light work requires extensive use of her hands and the ability to be on her feet for more than two hours a day. She further notes that her mental impairments make it unlikely that she is able to even perform sedentary work.

The Court agrees with the Commissioner that Plaintiff's challenges to the ALJ's RFC findings are largely conclusory and therefore insufficient to explain how those findings are unsupported by substantial evidence. Plaintiff does not, for example, identify what portions of the record the ALJ should have considered in determining her RFC or what portions of the record support her proposed RFC. Nor does she explain why the portions the ALJ relied on do not support the ALJ's findings. But in any event, the Court has reviewed the record and the ALJ's RFC finding. The Court concludes that the ALJ's RFC finding is supported by substantial evidence. The ALJ cited extensively to the testimony and records (Tr. 188-197) and found the evidence established that Plaintiff's condition had improved following therapy, medication, and surgery. The ALJ also carefully considered Plaintiff's activities of daily living, including the fact that she managed her parents' estate. As a result, the ALJ found that though Plaintiff's impairments

13

made it difficult, if not impossible, for her to accomplish complex tasks, she was capable of performing light work with simple work-related decisions. The ALJ's decision was well-reasoned. Accordingly, the Court will deny Plaintiff's motion for summary judgment and grant Defendant's motion for summary judgment.

## IV. CONCLUSION

Based upon the record, memoranda, and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 10), is **DENIED**, Defendant's Motion for Summary Judgment, (ECF No. 12), is **GRANTED**, and this matter is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Date: February 19, 2020

*s/ Tony N. Leung*
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*Alexandra J.C. v. Saul*
Case No. 18-cv-2900 (TNL)